IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
HORACIO H. MUNAR, : CASE NO. 1:05-CR-326
: 1:14-CV-2200
Petitioner :
: MEMORANDUM OF OPINION AND
-vs- : ORDER
:
:
UNITED STATES OF AMERICA, :
:
Respondent :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

     Petitioner Horacio H. Munar ("Mr. Munar"), through counsel, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 208: 5 CR 326). Mr. Munar maintains that he "is currently in custody of the United States and suffering the effects of an unconstitutional sentence" and requests relief on three general grounds: ineffective assistance of counsel, errors that occurred during trial, and errors in sentencing. Id. The government responded to Mr. Munar's petition by arguing that Mr. Munar received effective assistance of counsel and that Mr. Munar was using his petition to either re-argue alleged errors or raise for the first time errors that should have been raised on direct appeal. (Doc. 212). Mr. Munar's counsel filed a reply. (Doc. 213). For the reasons set forth below, Mr. Munar's petition for relief under 28 U.S.C. § 2255 will be denied.

## I. Background

On 19 April 2007, a jury convicted Mr. Munar of one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 371 and 1344 (Count 1); seven counts of aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 2 and 1344 (Counts 2–8); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h) (Count 9). (Doc. 121). On 28 November 2007, the Court sentenced Mr. Munar to a total term of incarceration of 300 months: 60 months on count 1, 300 months on Counts 2–8 and 240 months as to Count 9, all to be served concurrently. (Doc. 133).

Mr. Munar timely filed an appeal from his conviction. (Doc. 135). On direct appeal, Mr. Munar challenged the sufficiency of the evidence sustaining his conviction. Mr. Munar also contended the Court committed reversible error by allowing Exhibit 577 into the jury room for deliberations and for refusing to allow counsel to use MapQuest in cross-examination of FBI Agent Garver. Mr. Munar also argued his sentence was procedurally unreasonable because it imposed a six-level multiple-victim enhancement for 250 or more victims under U.S.S.G. § 2B1.1(b)(2) because there were only 15 financial institutions affected by the conspiracy. The Sixth Circuit affirmed Mr. Munar's conviction, but vacated the imposition of a six-level multiple-victim enhancement and remanded the case for resentencing. United States v. Munar, 419 F. App'x 600 (6th Cir. 2011) ("Munar I").

On remand, the Court determined that a two-level multiple-victim enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(A) was appropriate and recalculated Mr. Munar's advisory sentencing guidelines range as 262 to 327 months of imprisonment. The

2

Court resentenced Mr. Munar to a total incarceration period of 262 months: a 60-month term of imprisonment on Count 1, a 262-month term of imprisonment on Counts 2–8, and a 240-month term of imprisonment on Count 9, to be served concurrently with credit for time served. (Doc. 196).

Mr. Munar, represented by new appellate counsel, filed a timely notice of appeal from the resentencing. On his second direct appeal, Mr. Munar argued that his sentence was procedurally and substantively unreasonable, and that his prior appellate counsel had been ineffective for failing to raise other sentencing objections during the first appeal. The Sixth Circuit affirmed the 262-month sentence. United States v. Munar, 525 F. App'x 305 (6th Cir. 2013), cert. denied, 134 S. Ct. 322, 187 L. Ed. 2d 227 (2013) ("Munar II").

## II. Law and Argument

Section 2255 permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, set aside, or correct that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The movant has the burden of establishing any claim asserted in the petition. See Bowers v. Battles, 568 F.2d 1, 5 (6th Cir. 1977), cert. denied, 436 U.S. 910 (1978).

Where a constitutional error is alleged, in order to obtain relief under 28 U.S.C. § 2255 the record must reflect a constitutional error of such magnitude that it had a substantial and injurious effect or influence on the proceedings. See Brecht v.

3

Abrahamson, 507 U.S. 619, 637–38 (1993); Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990) (citing Hill v. United States, 368 U.S. 424, 428 (1962)). A prisoner seeking relief under 28 U.S.C. § 2255 must allege as a basis for relief one of the following: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006) (quoting Mallett v. United States, 334 F.3d 491, 496 (6th Cir. 2003)).

>Mr. Munar advances seven grounds for relief in his petition:
>
>I. Whether Petitioner received ineffective assistance of counsel at the trial and appellate levels when: (A) Appellate counsel failed to raise all but one of the objections stated in the original sentencing memorandum preserved by trial counsel; (B) the communication between the petitioner and counsel completely broke down; and (C) trial counsel failed to properly object to pertinent issues and failed to introduce evidence.
>
>II. Whether the trial court erred by increasing the sentencing level four levels for finding the petitioner to be the leader/organizer of five or more participants.
>
>III. Whether the trial court erred by finding a substantial part of the crime to have been committed outside the United States.
>
>IV. Whether the trial court erred by finding the crime was executed using sophisticated laundering, increasing the sentencing two levels.
>
>V. Whether the trial court erred by finding the loss amount to be greater than 2.5 million dollars.
>
>VI. Whether the trial court erred by allowing Exhibit 577 into the jury room.

VII. Whether Petitioner's sentence was procedurally and substantively unreasonable.

For the reasons that follow, the Court rejects each of Mr. Munar's grounds for relief.

### A. Ineffective Assistance of Counsel

Mr. Munar first argues that he received ineffective assistance of counsel from both his appellate and trial counsel. Mr. Munar contends that appellate counsel rendered constitutionally ineffective assistance of counsel by failing to raise on appeal all but one of the sentencing objections preserved during Mr. Munar's original sentencing, and for the complete breakdown of communication between Mr. Munar and counsel on appeal. Mr. Munar also argues that trial counsel was ineffective because she failed to properly object to certain issues and failed to introduce certain evidence.

Ineffective assistance of counsel is a proper basis for relief under 28 U.S.C. § 2255, provided that Mr. Munar can prove his allegations of ineffective assistance of counsel by a preponderance of the evidence. Pough, 442 F.3d at 964; see also McQueen v. United States, 58 F. App'x. 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."). To establish ineffective assistance of counsel, Petitioner must satisfy two requirements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that

5

> the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is deficient when the representation falls below an "objective standard of reasonableness." Id. at 688. A criminal defendant must overcome the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance," and that "the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Not all errors by counsel are constitutional violations. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. To satisfy the prejudice requirement of Strickland, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The failure to satisfy either requirement is fatal to an ineffective assistance of counsel claim. Id. at 697.

### 1. Failure to Raise Objections on Appeal

Mr. Munar first argues that appellate counsel was ineffective because he failed to raise all possible sentencing objections preserved by trial counsel on direct appeal. (Doc. 208 at 7–9). Mr. Munar argues that counsel's performance was deficient by failing to raise these issues, and that Mr. Munar suffered prejudice as a result because "[t]he mere consideration of these issues potentially could have changed the Petitioner's prison sentence dramatically." Id. at 8.

Although the failure to raise an issue on appeal can amount to constitutionally ineffective assistance, appellate counsel does not have an obligation to raise every possible claim that a client may have.  McFarland v. Yukins, 356 F.3d 688, 710 (6th Cir. 2004) (citing Jones v. Barnes, 462 U.S. 745, 751–54 (1983)).  The decision of which issues to pursue is typically left to counsel's professional judgment; "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 462 U.S. at 751–52).  Counsel's performance is strongly presumed to be effective, see McFarland, 356 F.3d at 710, and "'only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'"  Joshua v. DeWitt, 341 F.3d 430, 441 (6th Cir. 2003) (quoting Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002)).

Appellate counsel's performance was not deficient.  Counsel raised four issues during his first appeal: a challenge to the sufficiency of the evidence (Doc. 208-1 at 6), an objection to permitting Exhibit 577 into the jury deliberation room (id. at 10), an objection to the trial court's denial of the use of MapQuest to cross-examine a government witness (id. at 15), and an objection to the multiple-victim enhancement under U.S.S.G. § 2B1.1 (id. at 17).  Each of these issues was subject to deferential standard of review by the Sixth Circuit (sufficiency of the evidence and abuse of discretion).  The sentencing objections that Mr. Munar argues should have been made were also subject to the deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 46 (2007) ("[A]ppellate review of sentencing decisions is limited to

7

determining whether they are 'reasonable.'"). The sufficiency of the evidence challenge, if successful, would have resulted in acquittal, whereas the sentencing challenges could have only resulted in a reduced sentence. Counsel elected not to raise all five sentencing challenges raised by trial counsel, and instead chose to raise a single sentencing objection that ultimately proved meritorious. Mr. Munar cannot prove that the omitted challenges were clearly stronger than that raised by counsel during the first direct appeal. See Sullivan v. United States, 587 F. App'x 935, 944–45 (6th Cir. 2014) ("[T]o overcome the presumption of effectiveness, the ignored claim must have been clearly stronger than all of those other claims that were actually presented.").

Mr. Munar's counsel made a strategic decision to select arguments that were likely to prevail on direct appeal and others that presented the greatest upside for his client. This is the "hallmark of effective appellate advocacy," not deficient performance. Smith, 477 U.S. at 536. The Court rejects Mr. Munar's argument that appellate counsel was ineffective for failing to advance every sentencing objection on direct appeal.

### 2. Communication Between Client and Counsel

Mr. Munar also argues that he received ineffective assistance of appellate counsel because there was a total breakdown in communication between Mr. Munar and appellate counsel. (Doc. 208 at 9–11). In support, Mr. Munar provides letters that he had sent to counsel during the pendency of his first direct appeal that purport to show a total breakdown in communication. (Doc. 208-13). Mr. Munar contends that, had counsel been in communication with him, there is a reasonable probability that counsel would have been able to advance additional successful arguments. (Doc. 208 at 11).

8

Mr. Munar cannot show a total breakdown in communication. Mr. Munar's own letters reveal that he had been in communication with appellate counsel during the pendency of his first appeal. Mr. Munar and counsel spoke by phone on 22 August 2008. (Doc. 208-13 at 1). Counsel wrote Mr. Munar two months later. (Id. at 3). Counsel emailed pdf files of the trial transcript to Viviana Vazquez, per Mr. Munar's instructions. (Id. at 5). Mr. Munar acknowledges that counsel asked him if there were any specific legal issues that he would like to raise; Mr. Munar did not specify any. (Id. at 5). Counsel sent Mr. Munar the portion of the trial transcripts that he had not received from Ms. Vazquez. (Id. at 7). Mr. Munar also spoke with counsel "a couple of times" in December 2009. (Id. at 9).

Mr. Munar has failed to demonstrate that there was a total breakdown in communication between himself and counsel. Mr. Munar cannot show that counsel's performance was deficient as a result, and his second claim of ineffective assistance of appellate counsel fails.

### 3. Performance of Trial Counsel

Mr. Munar's last ineffective assistance of counsel claim alleges that trial counsel was ineffective for failing to properly object to evidentiary errors and for failing to utilize mitigating evidence. (Doc. 208 at 11–17). Specifically, Mr. Munar contends that trial counsel (1) failed to fully investigate an email that corroborated Government's Exhibit 205-C; (2) failed to utilize properly a government press release to cross-examine Daniel Barnicle; and (3) failed to introduce a map of Argentina to weaken a connection to a co-conspirator.

Mr. Munar argues that trial counsel was ineffective for failing to investigate an email that corroborated Government Exhibit 205-C. According to Mr. Munar, Exhibit 205-C was the only piece of evidence linking Mr. Munar to the Alabama operators, and the email was the only piece of evidence that corroborated the link. (Doc. 208 at 11). Mr. Munar argues that it was objectively unreasonable for counsel to fail to investigate the connection between Exhibit 205-C and the email, and that Mr. Munar was prejudiced by this failure when Mr. Munar received a sentence based, in part, on "attenuated and circumstantial evidence." (Id. at 12).

Mr. Munar's argument is without merit. Contrary to Mr. Munar's assertion, additional evidence corroborates the link between him and the Alabama operators. More than just merely being in his possession, Mr. Barnicle testified that Mr. Munar had sent him Exhibit 205-C. (Doc. 145 at 84). The link between Mr. Munar and Alabama, therefore, was also established by Mr. Barnicle's testimony. Counsel cross-examined Mr. Barnicle at length to undermine his credibility as a witness. (Doc. 145 at 130–47, 146 at 2–84). This reflects trial strategy, and Mr. Munar cannot overcome the presumption that "the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.

Mr. Munar also argues that trial counsel failed to utilize a press release concerning the arrest and guilty plea of Paulo Nogueira (Doc. 208-14) to undermine Mr. Barnicle's testimony. (Doc. 208 at 12–14). Mr. Munar argues that Mr. Barnicle based his testimony connecting Mr. Nogueira to Mr. Munar solely on the details contained in the press release and that Mr. Barnicle's testimony relating to Mr. Nogueira was inconsistent. (Doc. 208 at 12–13). Mr. Munar contends the failure to use the press

10

release was deficient performance, and that he was prejudiced by the increased sentence attributed to Mr. Munar's connection with Mr. Nogueira. (Id. at 14).

The Court rejects Mr. Munar's argument. Mr. Munar asserts, without support, that Mr. Barnicle's testimony "was clearly untrue." Mr. Barnicle did not testify, as Mr. Munar contends, that the phone call between Mr. Munar and Mr. Barnicle occurred in 2004. (Doc. 208 at 13). Instead, Mr. Barnicle's testimony reveals that this conversation occurred "early" in his relationship with Mr. Munar:

> Q. Now, Mr. Barnicle, during the time that you were dealing with the Defendant and receiving checks from him, do you recall what the largest check was in terms of dollar amount, the largest check you discussed with the Defendant?
>
> A. The largest check that I discussed with the Defendant was a check that I did not deposit through my accounts, but the check was on the order of 900 some odd thousand dollars.
>
> Q. And what discussions did you have with the Defendant about this check that was in excess of $900,000?
>
> MS. JOHNSON: Objection, your Honor.
>
> THE COURT: Overruled. You can answer.
>
> THE WITNESS: During the discussion, the telephone discussion, the Defendant asked me if I knew of -- if I could handle or if any of my bank accounts would be able to accept a deposit of $900,000, a check in the sum of 900 some odd thousand dollars, or if I knew anybody who could clear that.
>
> Q. What was your response to the Defendant?
>
> A. My response to the Defendant was that I was uncertain as to whether or not I would be able to clear an instrument in that dollar amount, especially at that time was rather early in our activity, and I had not gotten a feel for what I would be able to process for him and what I would not be able to process.

(Doc.145 at 9–10). Mr. Barnicle went on to testify that an operator in California ultimately processed the check. (Id. at 10). Rather than establishing a clear inconsistency, the testimony is consistent with the fact that Mr. Nogueira deposited the checks in 2003—if Mr. Barnicle's testimony is believed. As mentioned above, trial counsel subjected Mr. Barnicle to lengthy cross-examination in order to impeach his credibility. (Doc. 145 at 130–47, 146 at 2–84). Again, Mr. Munar cannot overcome the presumption that "the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S.at 689.

Finally, Mr. Munar argues that trial counsel was ineffective for failing to introduce a map of Argentina into evidence or call a witness to testify about street names in Argentina. (Doc. 208 at 14–17). Mr. Munar was arrested with a slip of paper that contained the word "Noguera." Mr. Munar argues that the slip of paper contained directions to a dentist office in Argentina, and "Noguera" refers to a street in Argentina and not Mr. Nogueira. Mr. Munar contends that trial counsel should have called a witness to support the argument that he did not know Mr. Nogueira. By failing to do so, Mr. Munar argues that he has been prejudiced by receiving a longer sentence due to the total amount of loss attributable to Mr. Nogueira. (Id. at 16).

Mr. Munar's argument fails because, even if it was deficient performance not to introduce a map of Argentina into evidence or call a witness to testify about street names in Argentina, Mr. Munar suffered no prejudice. Counsel elicited testimony on cross-examination from Special Agent Warner Irizarry that the piece of paper appeared to give directions to an orthodontist office. (Doc. 147 at 131–34). There was, therefore,

evidence in the record to support trial counsel's argument that the slip of paper referred to a street and not a co-conspirator:

> MS. JOHNSON: Mr. Munar is confident that you will review all of the evidence, but you need to pay special attention to Government's Exhibit 491 regarding the dentist note, appointment on one side and directions. These are street names, directions in fact, to the dentist's office, dentist, orthodontist, Spanish dentist, a dentist who may do braces but may do regular dental work, and the only thing -- it was very strange translation by the Government's witness. He wasn't -- didn't seem as if he was actually able to translate the words, but you will be able to read and take a look and read several of the street names. Noguera spelled N-O-G-U-E-R-A is not the same spelling that Mr. Nogueira says that he uses for his name, and yet this is another link. And it's very crucial to the Government because they want to be able to show a connection between Mr. Munar and Mr. Nogueira, whose handler, according to the Government, was Mr. Lombardi.

(Doc. 154 at 149). Trial counsel had evidence in the record to argue an alternative explanation for the piece of paper; the jury did not accept that interpretation of the evidence. Mr. Munar has failed to demonstrate by a reasonable probability that, had counsel introduced the map, the outcome of the trial would have been different. Strickland, 466 U.S. at 694.

Mr. Munar has failed to demonstrate that he received ineffective assistance of either appellate or trial counsel. The Court rejects Mr. Munar's first ground for relief under 28 U.S.C. § 2255.

**B. Claims Already Litigated**

Mr. Munar's second through fourth grounds for relief are objections to certain sentencing enhancements: a four-level increase for acting as an organizer or leader, pursuant to U.S.S.G. § 3B1.1(a); a two-level increase for committing a substantial part

13

of the fraudulent scheme from outside the United States, pursuant to U.S.S.G. § 2B1.1(b)(9)(B); and a two-level increase for sophisticated money laundering, pursuant to U.S.S.G. § 2S1.1(b)(3). Mr. Munar's sixth ground for relief contends that the district court erred by permitting Exhibit 577 into the jury room deliberation. His seventh ground for relief asserts that his sentence was both procedurally and substantively unreasonable.

"A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996) (collecting cases). The Sixth Circuit has considered, and rejected, identical arguments raised by Mr. Munar in his two direct appeals. In his first direct appeal, the Sixth Circuit held that it was harmless error to allow Exhibit 577 into the jury room. Munar I, 419 F. App'x at 609. In his second direct appeal, the Sixth Circuit concluded that Mr. Munar was barred from relitigating sentencing objections by the law-of-the-case doctrine, and that the sentence was neither procedurally nor substantively unreasonable. Munar II, 525 F. App'x at 306–07. Mr. Munar has not indicated any "highly exceptional circumstances" that warrant revisiting these already-resolved issues. Therefore, Mr. Munar is procedurally barred from raising these issues in his motion to vacate.

**C. Procedural Default**

Petitioner's fifth ground for relief is a challenge to the Court's imposition of an eighteen-level increase for the amount of loss as greater than $2.5 million, pursuant to U.S.S.G. § 2b1.1(b)(1)(J). Mr. Munar did not raise this issue in either of his direct appeals. When a defendant fails to raise an issue on direct appeal, that issue is waived

and may not be raised in a motion under 28 U.S.C. § 2255. Elzy v. United States, 205 F.3d 882, 884 (6th Cir. 2000). Mr. Munar's claim is waived unless he can demonstrate cause and prejudice to excuse the default. Id.

Ineffective assistance of counsel may constitute cause for procedural default. Huff v. United States, 734 F.3d 600, 606 (6th Cir. 2013). As discussed above, Mr. Munar did not receive ineffective assistance of counsel during his first direct appeal. As important, Mr. Munar has not alleged that he received ineffective assistance of counsel in his second direct appeal when he objected to four other sentencing enhancements, but not the eighteen-level increase for the amount of loss. Munar II, 525 F. App'x at 306–07. Mr. Munar's claim that the Court erred in applying eighteen-level increase for the amount of loss as greater than $2.5 million is procedurally barred.

### III. Conclusion

The motion, the files, and the record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); Pola v. United States, 778 F.3d 525, 532 (6th Cir. 2015). Therefore, the Court finds that the motion may be resolved without an evidentiary hearing. Mr. Munar's conviction and sentence are valid and his motion to vacate is denied.

IT IS SO ORDERED.

   /s/ Lesley Wells  
UNITED STATES DISTRICT JUDGE

Date: 21 July 2015